UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ANGELA CLAIRE HAYES                    CIVIL ACTION NO. 6:14-cv-02428

VERSUS                                 JUDGE DOHERTY

U.S. COMMISSIONER,                     MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION


## REPORT  AND  RECOMMENDATION


Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed in part and

reversed in part.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Angela Claire Hayes, fully exhausted her administrative

remedies prior to filing this action in federal court.  Ms. Hayes filed an application

for disability insurance benefits ("DIB") and an application for supplemental security

income benefits ("SSI"), alleging disability beginning on August 31, 2011.[1]  Her

---

[1]      Rec. Doc. 5-1 at 125, 129.

applications were denied.[2]  Ms. Hayes requested a hearing,[3] which was held on April

22, 2013 before Administrative Law Judge Lawrence T. Ragona.[4]  The ALJ issued

a decision on May 15, 2013,[5] concluding that Ms. Hayes was not disabled within the

meaning of the Social Security Act ("the Act") from August 31, 2011 through the

date of the decision.  Ms. Hayes asked for review of the decision, but the Appeals

Council concluded on June 11, 2014 that no basis existed for review of the ALJ's

decision.[6]   Therefore, the ALJ's decision became the final decision of the

Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).

Ms. Hayes then filed this action seeking review of the Commissioner's decision.

## FACTUAL BACKGROUND

Ms. Hayes was born on April 7, 1967.[7]  At the time of the ALJ's decision, she

was forty-six years old.  She graduated from high school and attended college for two

years.[8]  She has past relevant work experience as a secretary, a waitress, a caregiver,

---

[2]        Rec. Doc. 5-1 at 59, 60.

[3]        Rec. Doc. 5-1 at 10.

[4]        The hearing transcript is found at Rec. Doc. 5-1 at 27-57.

[5]        Rec. Doc. 5-1 at 15-22.

[6]        Rec. Doc. 5-1 at 4.

[7]        Rec. Doc. 5-1 at 31, 125, 129.

[8]        Rec. Doc. 5-1 at 32, 147.

and as a member of a landscaping crew.[9]  She alleges that she has been disabled since

August 31, 2011[10] due to a seizure disorder that began when she was eleven years

old.[11]

The record shows that, in August 2006, Ms. Hayes's seizure disorder was

found to meet the requirements of Listing 11.03, and she was found to be disabled.[12]

But in an attempt "to be normal like everybody else,"[13] she returned to work.[14]  After

having seizures at work, however, she claims that she was unable to continue

working.[15]  She then filed the instant applications for Social Security benefits.

The administrative record contains medical records for Ms. Hayes going back

to June 20, 2007 when she had a seizure, fell and hit a shelf, and had to have a 5 cm

laceration of her scalp sutured at Lafayette General Medical Center in Lafayette,

Louisiana.[16]

---

[9]       Rec. Doc. 5-1 at 33, 153.

[10]      Rec. Doc. 5-1 at 61, 129.

[11]      Rec. Doc. 5-1 at 61, 170.

[12]      The ruling is found in the record at Rec. Doc. 5-1 at 202-206.

[13]      Rec. Doc. 5-1 at 47.

[14]      Rec. Doc. 5-1 at 47.

[15]      Rec. Doc. 5-1 at 47-48.

[16]      Rec. Doc. 5-1 at 371-374.

The medical records indicate that she has consistently been prescribed medications for her seizure disorder.  On September 20, 2010, she was treated at Southwestern Louisiana Center for Health Services in Lake Charles, Louisiana[17] for a sinus infection.  The treatment notes indicate that she has a history of a epilepsy since age eleven.

On January 20, 2011, Ms. Hayes was treated at the American Legion Hospital in Crowley, Louisiana, after having a seizure, falling, and lacerating her head.[18]

On January 24, 2011, she was seen at University Medical Center in Lafayette, Louisiana.[19]  She reported the recent event that required stitches, and she claimed that her seizure activity had increased since then.  She was observed having a seizure in the triage area of the hospital.  She stated that her medications were not controlling her seizures.  She was discharged with prescriptions and an appointment with a neurologist.

---

[17]     Rec. Doc. 5-1 at 297-298.

[18]     Rec. Doc. 5-1 at 354-367.

[19]     Rec. Doc. 5-1 at 237-249.

On February 3, 2011, she was treated at the emergency department of University Medical Center in Lafayette, Louisiana for an injury to her chin that resulted from a fall due to a seizure and required sutures.[20]

Ms. Hayes was seen at the neurology clinic at LSU University Medical Center in Lafayette, Louisiana on March 18, 2011.[21]  She reported having had a seizure the night before, and she requested a change in medication.  The physician reported that her seizures were "not well controlled."

An EEG taken on March 30, 2011 was normal.[22]

On May 27, 2011, she was seen at SWLA Center for Health Services in Lake Charles, Louisiana for refills on her medications.[23]  Her chief complaint was seizure disorder, and she reported having seizures every other day.

On July 15, 2011, Ms. Hayes was seen at the neurology clinic at LSU University Medical Center in Lafayette, Louisiana with regard to her seizure disorder.[24]  An EEG was normal, and her medications were adjusted.  She reported

---

[20]     Rec. Doc. 5-1 at 307-315.

[21]     Rec. Doc. 5-1 at 261-263.

[22]     Rec. Doc. 5-1 at 260.

[23]     Rec. Doc. 5-1 at 299-301.

[24]     Rec. Doc. 5-1 at 221-223.

that she began having seizures at age eleven and that she was then currently having daily seizures despite taking medication.

On April 17, 2012, Ms. Hayes was seen by Gina L. Miller, APRN, FNP-BC, at Acadia Family Clinic in Crowley, Louisiana.[25]  She reported the onset of her seizure disorder at age eleven, and she stated that she had been having daily seizures for approximately a year.  It was noted that her seizure activity is worse with increased stress, that she cannot drive, and that she cannot stay alone.  She was prescribed medications including Tegretol and advised to follow up.

On May 30, 2012, Ms. Hayes was seen by Nurse Miller[26] for lab work.

On June 4, 2012, Ms. Hayes again saw Nurse Miller[27] with regard to a sinus infection.  The dosage of her Tegretol prescription was also increased, and it was noted that she should call in two weeks if there was no change in seizure activity with the increased dosage.

On July 3, 2012, Ms. Hayes saw Dr. Stephen R. Cannon in Crowley, Louisiana.[28]  She reported that while taking Tegretol she was still having episodes of

---

[25]     Rec. Doc. 5-1 at 346-349.

[26]     Rec. Doc. 5-1 at 344-345.

[27]     Rec. Doc. 5-1 at 342-343.

[28]     Rec. Doc. 5-1 at 333-335.

waking up gasping for breath, occasional spasms, and a period of weakness and confusion afterwards but no loss of consciousness.  Dr. Cannon referred her to a neurologist and added some medications.  His assessment was depression, seizure, and anxiety.  In the history section of his treatment notes, Dr. Cannon stated that Ms. Hayes "has anxiety disorder that causes seizures."  This statement is repeated in each of his subsequent treatment notes.

Ms. Hayes returned to Dr. Cannon on July 6, 2012,[29] reporting that her new medications were causing her to feel like a zombie and see double.  The treatment notes indicate that Ms. Hayes had experienced no seizure activity since the recent medication change.  The new medication was discontinued and the amount of Tegretol that she was taking was increased to 600 mg.

On July 22, 2012, Ms. Hayes accidentally took a double dose of Tegretol and was treated at American Legion Hospital.[30]

Ms. Hayes again saw Dr. Cannon on August 3, 2012[31] for a one month follow-up on her seizure disorder.  She reported no increase in seizure activity and told Dr. Cannon about the accidental overdose of Tegretol.  The neurology section of the

---

[29]    Rec. Doc. 5-1 at 336-337.

[30]    Rec. Doc. 5-1 at 368-370.

[31]    Rec. Doc. 5-1 at 392-393.

treatment notes indicates that she denied having any seizures.  Dr. Cannon's plan with regard to Ms. Hayes's seizure disorder was to continue her medications and reach a stable Tegretol level.

On August 24, 2012, a lab report from Acadia Laboratory in Crowley, Louisiana showed that Ms. Hayes had a therapeutic level of Tegretol in her system.[32]

On November 20, 2012, Ms. Hayes returned to Dr. Cannon, complaining of hip and joint pain.[33]  Aside from confirming her medications and the statement noted earlier, there was no discussion of her seizure disorder.

Ms. Hayes saw Dr. Cannon again on December 5, 2012[34] to follow up with her complaints of hip and back pain.  She reported that she was very much improved. Again, aside from confirming her medications and the statement noted earlier, there was no discussion of the seizure disorder.

Ms. Hayes again saw Dr. Cannon on January 8, 2013.[35]  She complained that she was still coughing and not feeling better.  As before, there was no discussion of

---

[32]     Rec. Doc. 5-1 at 397.

[33]     Rec. Doc. 5-1 at 395-396.

[34]     Rec. Doc. 5-1 at 415-416.

[35]     Rec. Doc. 5-1 at 413-414.

her seizure disorder except the statement noted earlier and a reference to her prescribed medications.

Ms. Hayes next saw Dr. Cannon on January 23, 2013, complaining of her ears popping and her chest wheezing.[36]  She was diagnosed with allergic rhinitis.  Again, Dr. Cannon's treatment notes include no discussion of her seizure disorder other than the statement noted earlier and a reference to her ongoing medication regimen.

Ms. Hayes again saw Dr. Cannon on February 28, 2013,[37] and he diagnosed her with acute sinusitis.  Other than confirming her medications and the statement noted earlier, there is no discussion of her seizure disorder.

Ms. Hayes followed up with Dr. Cannon on March 14, 2013.[38]  Again, other than confirming her prescription medication and including the statement noted earlier, his notes contain no discussion of her seizure disorder.

Thus, between early July 2012 and the date of the hearing in April 2013, Ms. Hayes did not seek treatment for her seizure disorder other than to refill the anti-convulsant medications that she takes for that disorder nor do her medical records indicate that she was continuing to have seizure activity during that time period.

---

[36]     Rec. Doc. 5-1 at 411-412.

[37]     Rec. Doc. 5-1 at 406-410.

[38]     Rec. Doc. 5-1 at 402-405.

On April 22, 2013, the date of the hearing, Dr. Cannon stated that "Ms Hayes suffers from anxiety and seizure disorder.  Her seizures are currently controlled on medication."[39]

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[40] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[41]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[42]

---

[39]     Rec. Doc. 5-1 at 417.

[40]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[41]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[42]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

-10-

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[43]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[44]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[45]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[46]

## B.   Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[43]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[44]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[45]     *Martinez v. Chater*, 64 F.3d at 174.

[46]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

-11-

both insured and disabled, regardless of indigence.[47]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[48]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[49]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[50]

---

[47]     See 42 U.S.C. § 423(a).

[48]     42 U.S.C. § 1382(a)(1) & (2).

[49]     42 U.S.C. § 1382c(a)(3)(A).

[50]     42 U.S.C. § 1382c(a)(3)(B).

C.      **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled will be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if the claimant can perform any other work at step five.[51]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[52] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

---

[51]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[52]      20 C.F.R. § 404.1520(a)(4).

record.[53]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[54]

The claimant bears the burden of proof on the first four steps.[55]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[56]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[57]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[58]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[59]

---

[53]     20 C.F.R. § 404.1545(a)(1).

[54]     20 C.F.R. § 404.1520(e).

[55]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[56]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[57]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[58]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[59]     *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

D.     **THE ALJ'S FINDINGS AND CONCLUSIONS**

In this case, the ALJ determined, at step one, that Ms. Hayes has not engaged in substantial gainful activity since August 31, 2011.[60]  This finding is supported by the evidence in the record.

At step two, the ALJ found that Ms. Hayes has the following severe impairments:  epilepsy and anxiety.[61]  This finding is supported by evidence in the record.

At step three, the ALJ found that Ms. Hayes has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[62] The claimant challenges this finding.

The ALJ found that Ms. Hayes has the residual functional capacity to perform work at all exertional levels except that, because of her seizure disorder, she should avoid working around hazards, unprotected heights, and moving machinery.[63]  The ALJ also found that she is unable to perform complex work.[64]

---

[60]      Rec. Doc. 5-1 at 17.

[61]      Rec. Doc. 5-1 at 17.

[62]      Rec. Doc. 5-1 at 17.

[63]      Rec. Doc. 5-1 at 19.

[64]      Rec. Doc. 5-1 at 19.

At step four, the ALJ found that Ms. Hayes is not capable of performing her past relevant work.[65]

At step five, the ALJ found that Ms. Hayes was not disabled from August 31, 2011 through May 15, 2013 (the date of the decision) because there are jobs in the national economy that she can perform.[66]  Ms. Hayes challenges this finding.

### E.   THE ALLEGATIONS OF ERROR

Ms. Hayes claims that the ALJ erred in concluding that her seizure disorder does not meet the requirements of Listing 11.03.  She also contends that the ALJ erred in finding that she is able to sustain work activity on a regular basis.

### F.   DOES THE CLAIMANT'S SEIZURE DISORDER MEET A LISTING?

The record establishes that Ms. Hayes has a severe seizure disorder for which she takes medication.  She claims that she has had this disorder since the age of eleven.  She testified that she has seizures every day, and that she had a seizure about thirty minutes before her hearing.[67]  Her attorney testified that he witnessed a seizure in his office although the date of that seizure was not stated.[68]  The claimant's son

---

[65]     Rec. Doc. 5-1 at 20.

[66]     Rec. Doc. 5-1 at 21-22.

[67]     Rec. Doc. 5-1 at 38, 40.

[68]     Rec. Doc. 5-1 at 48.

submitted a document stating that she has seizures multiple times per week, even twice each day.[69]  Indeed, in 2006, the Commissioner found that Ms. Hayes's seizure disorder satisfied the requirements of Listing 11.03, and the ALJ evaluating her current claim found that her seizure disorder is a severe impairment.

But Ms. Hayes returned to work after she was found to be disabled, thereby forfeiting her disability status.  A person who is working is not disabled regardless of medical findings.[70]  She now claims that she again became disabled on August 31, 2011.  But the medical records that she submitted do not establish that she met the requirements of Listing 11.03 at all times after August 31, 2011.

Listing 11.03 reads as follows:

> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.  With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.[71]

---

[69]   Rec. Doc. 5-1 at 176.

[70]   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[71]   20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.03.

The listing also explains the type of evidence that must be presented concerning seizures, as follows:

> In epilepsy, regardless of etiology, degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures.  At least one detailed description of a typical seizure is required.  Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena.  The reporting physician should indicate the extent to which description of seizures reflects his own observations and the source of ancillary information. Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available.

The record does contain Ms. Hayes's own description of a typical seizure and a statement from Ms. Hayes's son describing the type and frequency of her seizures. There is nothing from Dr. Cannon – or any other treating physician – reflecting his own observations of Ms. Hayes's seizure disorder, but the record does contain information regarding the frequency of seizures that Ms. Hayes reported to her physicians.

It is undisputed that Ms. Hayes experiences the type of seizures described in this listing.  She testified that she partially loses consciousness,[72] experiences a loss

---

[72]     Rec. Doc. 5-1 at 41.

of muscle and breath control,[73] falls,[74] and then experiences fatigue requiring her to stay in bed approximately four days per month.[75]  In June 2007 and again in January 2011, Ms. Hayes fell while having seizures, and her falls resulted in scalp lacerations that had to be sutured.  In February 2011, a fall during a seizure necessitated sutures to her chin.  All three reported falls predate Ms. Hayes's alleged disability onset date. Ms. Hayes and her son both presented evidence that the frequency of her seizures satisfy the listing.  She said she has daily seizures, and her son stated that they are even more frequent than that.  Ms. Hayes also testified that "medically there's nothing they can do for me. . . except. . . experiment with medicines."[76]

However, Ms. Hayes's medical records conflict with her testimony during the time period from July 6, 2012 forward.  The medical records for that time period do not support her claims of daily seizures nor do they support her claim that the frequency of her seizures satisfies the listing's requirement of monthly seizures despite medication.  To the contrary, between early July 2012 and the date of the hearing in April 2013, Ms. Hayes did not seek treatment for her seizure disorder other

---

[73]    Rec. Doc. 5-1 at 38, 41, 176, 177.

[74]    Rec. Doc. 5-1 at 34, 36, 38-39, 48-49, 177, 307-315, 354-367, 371-374.

[75]    Rec. Doc. 5-1 at 43-44, 177.

[76]    Rec. Doc. 5-1 at 40.

than to refill the anti-convulsant medications that she takes for that disorder nor do her medical records indicate that she was continuing to have seizure activity during that time period. On July 6, 2012, her treating physician, Dr. Cannon, noted that Ms. Hayes had experienced no seizure activity since a recent medicine change.[77] None of the medical records after that date document that there has been seizure activity or the frequency of the seizures if there was any. Then, in the most recent medical record, dated April 22, 2013, Dr. Cannon stated: "Her seizures are currently controlled on medication."[78]

An impairment that reasonably can be remedied or controlled by medication cannot serve as a basis for a disability finding.[79] Furthermore, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."[80] When a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and

---

[77]    Rec. Doc. 5-1 at 336-337.

[78]    Rec. Doc. 5-1 at 417.

[79]    *Taylor v. Bowen*, 782 F.2d 1204, 1298 (5th Cir. 1986); *Johnson v. Bowen*, 84 F.2d 340, 348 (5th Cir. 1988).

[80]    *Perez v. Barnhart*, 415 F.3d at 465-66 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[81] However, Dr. Cannon's opinion that Ms. Hayes's condition has been controlled by medication applies only to the time period from July 6, 2012 forward.  On July 6, 2012, Dr. Cannon noted that Ms. Hayes had experienced no seizure activity since the recent medication change.  At Ms. Hayes's next appointment with Dr. Cannon on August 3, 2012, the treatment notes indicate that Ms. Hayes denied having any seizures, and there are no reports of seizures in Dr. Cannon's records for any date thereafter.  During the time period from August 2011 to July 6, 2012, however, Ms. Hayes reported to her treating physicians that she was having seizures every day or every other day, and her prescribed medications required adjustment.  No evidence in the record for that time period conflicts with Ms. Hayes's contention – and the evidence she presented in support of that contention – that her seizure disorder met or medically equaled Listing 11.03.  Substantial evidence in the record for that time period conflicts with Dr. Cannon's ultimate opinion – given on April 22, 2013 – that her condition was well controlled by medication.

---

[81]     20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d at 393.

"The ALJ as factfinder has the sole responsibility for weighing the evidence"[82] and has the responsibility to resolve conflicts in the evidence.[83]  The decision made by the ALJ in this case is supported by evidence in the record and must be affirmed – but only with regard to the time period starting with July 6, 2012.  For the time period from the alleged onset date of August 31, 2011 through July 5, 2012, the ALJ's decision is not supported by substantial evidence in the record.  For that reason, it is recommended that the Commissioner's decision be reversed with regard to the earlier time period.

The Social Security regulations recognize that "it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment."[84]  Accordingly, the undersigned finds that Ms. Hayes's seizure disorder met or medically equaled a listed impairment for the time period from August 31, 2011 through July 5, 2012, and recommends that the Commissioner's ruling should be reversed in part so that DIB and SSI benefits may be awarded for that time period. With regard to the time period after July 5, 2012, however, the undersigned recommends that the Commissioner's ruling should be affirmed.

---

[82]     *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

[83]     *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

[84]     20 C.F.R. § 404.1520(c).

**G.**     **The Commissioner did not Err in Failing to Find that the Claimant Cannot Sustain Employment**

The claimant's second assignment of error is that the ALJ erred in failing to find that Ms. Hayes is incapable of sustaining employment because her seizure disorder results in her having to miss approximately four days of work each month. However, Ms. Hayes did not testify that she stopped working because of absenteeism resulting from her seizure disorder nor is there any evidence in the record documenting how many days she missed on her last job while having or recovering from seizures.  Instead, she testified that her seizures are scary for other workers to observe and that no one wants to work with someone who has seizures.[85]  She stated that after she had a seizure on the job, her employer "started watching [her] more."[86] She said that she stopped working after her coworkers saw her have a seizure on the job.[87]

There is no requirement that an ALJ make a finding regarding the sustainability of employment in all cases.[88]  Such a finding is necessary only if the claimant's

---

[85]     Rec. Doc. 5-1 at 39.

[86]     Rec. Doc. 5-1 at 34.

[87]     Rec. Doc. 5-1 at 48.

[88]     *Perez v. Barnhart*, 415 F.3d at 465; *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).

"ailment waxes and wanes in its manifestation of disabling symptoms."[89]  Here, there

is no allegation that Ms. Hayes's impairments wax and wane.  In fact, as noted above,

there is no reliable evidence concerning the frequency of the claimant's seizure

activity.  Consequently, there was no requirement that the ALJ's ruling include a

separate finding concerning the sustainability of employment.

In such cases, including this one, "the claimant's ability to maintain

employment is subsumed in the RFC [residual functional capacity] determination."[90]

"A finding that a claimant is able to engage in substantial gainful activity requires

more than a simple determination that the claimant can find employment and that he

can physically perform certain jobs; it also requires a determination that the claimant

can hold whatever job he finds for a significant period of time."[91]  "[T]he ability of

a claimant to perform jobs in the national economy must take into account the actual

ability of the claimant to find and hold a job in the real world."[92]  This requirement

extends to cases involving mental as well as physical impairments.[93]  Therefore, the

---

[89]     *Perez v. Barnhart*, 415 F.3d at 465, quoting *Frank v. Barnhart*, 326 F.3d at 619.

[90]     *Perez v. Barnhart*, 415 F.3d at 465.

[91]     *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (emphasis in original).

[92]     *Singletary v. Bowen*, 798 F.2d at 822 (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984)).

[93]     *Watson v. Barnhart*, 288 F.3d 212, 217–18 (5th Cir. 2002).

ALJ's finding that Ms. Hayes has the residual functional capacity to perform work at all exertional levels with the exceptions addressing her seizure disorder[94] must be understood as implicitly incorporating a finding that she is capable of sustaining employment in such a job.  Accordingly, the ALJ did not err in failing to address whether Ms. Hayes can sustain employment.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record with regard to the time period from July 6, 2012 forward but not with regard to the time period from August 31, 2011 through July 5, 2012.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED IN PART** and **AFFIRMED IN PART**.

Accordingly, the undersigned recommends that the Commissioner's decision be REVERSED IN PART and remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions that the claimant's applications for Disability Insurance Benefits and Supplemental Security Income be granted and for computation and payment of an award of benefits for the time period beginning on

---

[94]     Rec. Doc. 5-1 at 19.

August 31, 2011 and ending on July 6, 2012.  In all other respects, the undersigned recommends that the Commissioner's decision be AFFIRMED.

Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[95]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

---

[95]     See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir.1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 15th day of October 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:   10/15/2015
BY:   EFA
TO:   RFD
        cg

-27-